Frances K. PRINCE, Appellant,

v.

Robert E. BRIDGES, Individually and as Director of the Department of Social Services of the City of Portsmouth, Virginia, Appellee.

No. 75–1648.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1976.

Decided July 30, 1976.

Leonard B. Sachs, Norfolk, Va. (Furniss, Davis & Sachs, Norfolk, Va., on brief), for appellant.

Gordon B. Tayloe, Jr., City Atty., Norfolk, Va., and (Claude M. Scialdone, Asst. City Atty., Portsmouth, Va., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, WIDENER, Circuit Judge and HADEN, District Judge *

BOREMAN, Senior Circuit Judge:

On April 6, 1973, Frances K. Prince was discharged from her position as Clerical Supervisor for the Food Stamp Division, Department of Social Services, City of Portsmouth, Virginia. She was discharged by Robert Bridges, the Director of the Department who was appointed by and answered to the City Manager. In a letter from Bridges, which was handed to her, the reasons assigned for her dismissal were that she had been acting in an "unprofessional

manner" by making "malicious statements" about departmental employees and that her conduct had been determined as bringing discredit to the agency.[1] Mrs. Prince was immediately relieved of her position, given two weeks severance pay and advised of her right to appeal to the State Merit System Council.

In accordance with the applicable provisions of the state merit plan for personnel administration, Mrs. Prince noted an appeal for a hearing before the Council. The hearing was held and the Council recommended that Mrs. Prince be reinstated to her former position but Bridges declined to follow the Council's purely advisory decision and affirmed his original decision with respect to her dismissal.

Subsequently Mrs. Prince initiated this civil action against Bridges, both individually and in his official capacity, under the provisions of 42 U.S.C. §§ 1982, 1983, 1985 and 1986. The thrust of her complaint was that she was deprived of her employment without due process of law in violation of the fourteenth amendment. Following an evidentiary hearing the district judge found that Mrs. Prince was not entitled to any relief and dismissed her complaint.

Mrs. Prince appeals from the district court's dismissal, contending that she was denied due process of law because: (1) her peremptory dismissal without a hearing denied her the opportunity to refute the charges made against her and (2) the merit plan's procedures did not provide an opportunity to have her case heard by a tribunal which could provide her relief for a wrong.

■ A public employee who is discharged without a hearing is not denied fourteenth amendment due process unless he is thereby deprived of a legitimate "liberty" or "prop-

---

* Charles H. Haden II, United States District Judge for the Northern and Southern Districts of West Virginia, sitting by designation

1. In the latter part of March 1973, Robert Bridges was informed that Mrs. Prince had allegedly made certain statements about the activities of the department. Upon investigation it was discovered that Mrs. Prince had conducted discussions in the open office (with many persons present) about persons who

were the recipients of benefits under the Food Stamp Program; that she had made improper statements about employees, and accused some of them of improperly receiving food stamps and of food stamp fraud. In addition, Mrs. Prince allegedly accused Bridges and others in the employ of the Department of Social Services of hindering an investigation then being conducted concerning the loss of food stamps.

erty" interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 31 L.Ed.2d 548 (1972). Although Mrs. Prince argues that she was denied both "liberty" and "property" interests we have reviewed the record and find no deprivation of any interest protected by the fourteenth amendment.

Interpreting its decision in *Roth, supra,* the Supreme Court has held that in cases concerning dismissal of a public employee, "liberty is not offended by dismissal from employment itself, but instead by dismissal based upon an *unsupported charge* which could wrongfully injure the reputation of an employee." *Arnett v. Kennedy,* 416 U.S. 134, 157, 94 S.Ct. 1633, 1646, 40 L.Ed.2d 15 (1974) (emphasis added). Mrs. Prince was not dismissed on an "unsupported charge" without being given the chance to refute the allegations made against her; she was given a full evidentiary hearing [2] before the Merit Council on the question of the validity of the charges made by Bridges, and the Council recognized that the reasons given for her discharge were not without some substance.[3]

Furthermore, there is no indication that Mrs. Prince's discharge will stigmatize her or create any other disability that might foreclose future employment. In fact, Bridges informed Mrs. Prince that she was eligible, due to the Merit Council's decision, for other merit plan positions. Under the circumstances, Mrs. Prince's discharge did not deprive her of a "liberty" interest protected by the fourteenth amendment. *See Bishop v. Wood,* —— U.S. ——, 96 S.Ct. 2074, 48 L.Ed.2d 684, 44 U.S.L.W. 4820 (1976).

Moreover, we conclude that Mrs. Prince had no legitimate "property" inter-

est in her continued employment. The Supreme Court recognized in *Roth, supra,* that:

> To have a property interest in a benefit [job], a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have *a legitimate claim of entitlement to it.*

408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added). Thus a person may have a protected "property" interest in public employment if contractual or statutory provisions guarantee continued employment. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1971). In *Arnett v. Kennedy, supra,* the Court held that a statutory provision—that a federal employee could be discharged only "for cause"—was a sufficient "property" interest to invoke the constitutional guarantee of procedural due process.

In the instant case there appears to be no contractual or other arrangement limiting the right of termination of employment. Section 63.1–61 of the Virginia Code provides in substance that the employees of a local public welfare department serve at the pleasure of the local appointing authority, subject only to the provisions of the merit plan. Mrs. Prince alleged in her complaint that Bridges was the local appointing authority, and the district court specifically found that Mrs. Prince served at the pleasure of Bridges. Mrs. Prince held her position in the Department of Social Services of the City of Portsmouth at the will and pleasure of Robert Bridges, subject only to the provisions of the merit plan. Any "property" interest Mrs. Prince would have in continued public employment would necessarily arise out of the statutory protection

---

2. The Supreme Court recognized in *Arnett v. Kennedy, supra,* that when the purpose of the hearing is to provide the person with an opportunity to clear his name, a hearing *after* the actual dismissal is a sufficient compliance with the requirements of the due process clause. 416 U.S. at 157, 94 S.Ct. 1633.

3. Although the Merit Council recommended leniency and reinstatement, it recognized that there was some validity to the charge that Mrs. Prince had accused members of the depart-

ment's staff of illegally receiving food stamps. The Council found that "there was substance to the charge that the appellant may well have . . . discussed or mentioned the names of staff employees who were receiving food stamps." Letter from W. Richard Lawrence, Merit System Supervisor and Council Secretary, to Claude M. Scialdone, Assistant City Attorney for the City of Portsmouth, July 16, 1973.

provided by the merit plan. Thus Mrs. Prince's "property" interest in her continued employment was her right to be discharged in accordance with the statutory procedures provided by the merit plan. A constitutional guarantee of procedural due process arises when a public employee is discharged in violation of the procedural rules designed to protect him. In such a situation he has a legitimate "property" interest to protect. *See Arnett v. Kennedy, supra.* In the present case, however, the provisions of the merit plan have not been violated and Mrs. Prince has received the protection that the merit plan provides.[4] Thus, although Mrs. Prince contends that the *merit plan itself* fails to insure that arbitrary and unjustified terminations can be corrected by the Merit Council,[5] we hold that she has not been deprived of a "property" interest protected by the fourteenth amendment because she has received all the protection the merit plan provides. As recognized by the Supreme Court in *Arnett v. Kennedy*: "Here the property interest which [the discharged employee] had in his employment was itself conditioned by the procedural limitations which accompanied the grant of that interest." 416 U.S. at 155, 94 S.Ct. at 1645.

■ Public employees serving at the will and pleasure of a public agency or authorized officer thereof, are subject to summary discharge with or without cause, so long as such discharge is not in retribution for an exercise of some constitutionally protected right. *See Hodgin v. Noland,* 435 F.2d 859 (4 Cir. 1970), *cert. denied,* 408 U.S. 942, 92 S.Ct. 2846, 33 L.Ed.2d 766 (1972); *Brown v. Hirst,* 443 F.2d 899 (4 Cir. 1971), *cert. denied,* 404 U.S. 1040, 92 S.Ct. 720, 30 L.Ed.2d 732 (1972), *aff'g* 322 F.Supp. 236 (W.D.Va. 1971). Since Mrs. Prince failed to establish that her discharge was either in violation of some constitutionally protected right or in retribution for the exercise of a constitutional right, she is entitled to no relief. Accordingly the judgment of the district court will be affirmed.

*Affirmed.*

---

4. Bridges did not violate the provisions of the merit plan. It was within his discretion as the appointing authority to immediately terminate Mrs. Prince's employment. The applicable section of the regulations state:

   If the reason for dismissal is such that *in the discretion of the appointing authority* it is in the best interest of the agency for the employee's service to be terminated immediately, this may be done.

   1 Virginia Department of Welfare and Institutions Instructions § 402.10–B (1971) (emphasis added). Furthermore, the Merit Council's decision recommending reinstatement was merely advisory. The regulations state:

   The Council within ten days after the hearing shall make its recommendation in writing to the appointing authority and the Personnel Director. After consideration of the Council's recommendations, the appointing authority shall make its decision *which shall be final.*

   1 Virginia Department of Welfare and Institutions Instructions § 402.11–D (1971) (emphasis added). Thus Bridges did not act beyond the scope of his authority when he rejected the Merit Council's recommendation.

5. Mrs. Prince argues that under the applicable administrative procedures Bridges could arbitrarily ignore the Merit Council's recommendation regarding an employee's reinstatement and refuse reinstatement thus denying the discharged employee due process of law.