ERVIN, Circuit Judge:
This case arises from the alleged unlawful discharge of Joel D. Kersey, Jr. and Louis R. Freeman, two former policemen for the City of Chesapeake, Virginia. Although Kersey and Freeman were afforded notice and a hearing pursuant to the Law-Enforcement Officers’ Procedural Guarantees, Va.Code § 2.1-116.1 et seq. (1979), they brought a 42 U.S.C. § 1983 action against the City of Chesapeake and other city officials[1] claiming that they had been denied their constitutional right to “meaningful” due process of law. This claim was predicated on their contentions that: 1) they received no hearing prior to termination; 2) one of the panel members at the hearing held subsequent to their termination was biased against them; and 3) the Chief of Police arbitrarily and capriciously rejected the recommendation of the panel that Kersey and Freeman be reinstated to their positions with the Chesapeake Police Department.
The district court granted defendants’ motion for a directed verdict after Kersey and Freeman had presented their evidence. We find no error below and, accordingly, affirm.
I.
Kersey and Freeman had been police officers for approximately five years when they were discharged from the Chesapeake Police Department. The events leading to their termination began on March 3, 1979, when a complaint involving sexual misconduct was filed against them in Norfolk, Virginia. They immediately were suspended from the police force without pay pending the outcome of an administrative investigation concerning the alleged misconduct.[2]
*732 In connection with the investigation, Acting Chief Shipley[3] ordered Kersey and Freeman to undergo a polygraph examination.[4] They were informed on May 3,1979, that if they refused to take it, they could be dismissed for disobeying a direct order. After consulting with their attorney, Kersey and Freeman refused to take the polygraph examination.
On May 22, 1979, Chief Lakoski notified them by letter that they had been terminated for refusing to obey a direct order but that they had a right to appeal the decision. A hearing was conducted on June 20, 1979, before a three-member panel consisting of a member chosen by Kersey and Freeman, a member chosen by Chief Lakoski, and a member selected by the other panelists. Following the testimony, the hearing panel, by a two-to-one vote, recommended that Kersey and Freeman be reinstated to their positions with the Chesapeake Police Force.
Chief Lakoski subsequently informed them that he had considered the recommendation, but had decided to uphold their termination because they had disobeyed a direct order. Kersey and Freeman then appealed to the City Manager of the City of Chesapeake. After reviewing police reports, the transcript of the hearing, the Operations Procedures Manual of the Chesapeake Police Department, and whether Kersey and Freeman had disobeyed a direct order, the City Manager upheld Chief Lakoski’s decision.
II.
Due process under the Fourteenth Amendment requires that state governments provide minimal procedural safeguards, including some form of notice and a hearing, before taking action that deprives an individual of “liberty” or “property.” See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests in employment positions are not created by the Constitution, but rather, are created and their dimensions defined by independent sources such as state law, local ordinances, and employment contracts. Id. at 577, 92 S.Ct. at 2709. See Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In Himmelbrand v. Harrison, 484 F.Supp. 803 (W.D.Va.1980), the court held that Virginia policemen have “a ‘legitimate claim of entitlement to continued employment’ at least to the extent that [the Law-Enforcement Officers’ Procedural Guarantees statute] furnishes insurance against arbitrary employment actions.” Id. at 808. Thus, Kersey and Freeman were denied due process under the Fourteenth Amendment only if they were deprived of the benefits conferred by Va. Code § 2.1-116.1 et seq. (1979). See id.
A.
Kersey and Freeman first contend that their right to due process was violated because they were not given a hearing prior to their discharge from the Chesapeake Police Department. We disagree.
Section 2.1-116.5(1) of the Code of Virginia provides that “Whenever a law-enforcement officer is dismissed ... for punitive reasons, he may, within a reasonable amount of time following such action, as set by the agency, request a hearing.” (emphasis added). That there is no automatic right to a pre-termination hearing is underscored by another provision that such a hearing may be provided “at the option of the agency.” Va.Code, § 2.1-116.5(3). Because the scope of the property interest in continued employment with the Chesapeake *733 Police Department is defined by the Law-Enforcement Officers’ Procedural Guarantees, which provides that there is no automatic right to a pre-termination hearing, we find that failure to afford Kersey and Freeman a hearing prior to their discharge did not violate due process.
B.
Kersey and Freeman next contend that they were denied due process because one of the panel members at the hearing was biased against them. The claim is based entirely on the fact that Chief Lakoski selected a panel member and the panel member voted against Kersey and Freeman. Consideration of the Law-Enforcement Officers’ Procedural Guarantees reveals that the claim clearly is without merit.
Section 2.1-116.5(2) provides:
The hearing shall be conducted by a panel, such panel to consist of one member from within the agency selected by the grievant, one member from within the agency of equal rank of the grievant but no more than two ranks above appointed by the agency head, and a third member from within the agency to be selected by the other two members.
(emphasis added).
The hearing panel in this case was comprised of an individual chosen by Kersey and Freeman, an individual chosen by Chief Lakoski, and a third individual chosen by the two previously chosen members. Chief Lakoski obviously did not offend the due process rights of Kersey and Freeman by appointing a panel member when he merely was fulfilling his statutory duty to make an appointment.[5]
C.
Finally, Kersey and Freeman contend that they were denied due process because Chief Lakoski arbitrarily and capriciously rejected the recommendation of the panel that Kersey and Freeman be reinstated to their positions with the Chesapeake Police Department. We disagree.
Section 2.1-116.7 of the Law-Enforcement Officers’ Procedural Guarantees provides that the recommendation of the panel “shall be advisory only, but shall be accorded significant weight.” As the court in Himmelbrand v. Harrison, supra, observed:
This court cannot presume that an employer would automatically or arbitrarily ignore the conclusions of a grievance panel assembled pursuant to Va.Code § 2.1-116.5.2 (1979). Rather, the appropriate judicial presumption would seem to be that when all the facts come to light, official action will be “regular.” Bishop v. Wood, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976).
484 F.Supp. at 808, n.9.
In this case, Chief Lakoski indicated in a letter to Kersey and Freeman that he had considered the recommendation of the panel but had decided to uphold their termination because they had disobeyed a direct order. There is no evidence suggesting that the decision was arbitrary and capricious. It is undisputed that the Chief of Police gave Kersey and Freeman a direct order to undergo a polygraph examination in connection with an ongoing investigation, they were informed that refusal could result in dismissal, and they refused to take the polygraph examination, nonetheless. In light of these facts, it does not appear that the decision of Chief Lakoski was arbitrary. We find, therefore, that Chief Lakoski did not violate due process when he rejected the recommendation of the panel. Cf. Prince v. Bridges, 537 F.2d 1269 (4th Cir. 1976).
III.
For the foregoing reasons, the decision of the district court is affirmed.
AFFIRMED.

. In addition to the City of Chesapeake, Kersey and Freeman sued John T. Maxwell, the City Manager; R. A. Lakoski, the Chief of Police; and I. M. Shipley, Jr., the Deputy Chief of Police.

. Although the charges against Kersey and Freeman were tried in the General District Court of Norfolk, Virginia, and dismissed on April 26, 1979, the Chesapeake Police Department continued its investigation concerning the matter.

. Deputy Chief Shipley had been appointed hearing officer for the investigation.

. When Kersey and Freeman applied for employment with the Police Department, they gave sworn, affirmative answers to the following questions:
72. Are you willing to submit to discipline and the lawful orders of superior officers?
73. If employed by the Division of Police or Fire, do you agree to submit to a polygraph examination * if requested to do so by the Chief of the division?
74. Do you agree to assist the Division of Police or Fire in the investigation of any complaint made against you?
* Kersey and Freeman do not challenge use of the polygraph by the Chesapeake Police Department.

. Furthermore, the issue whether a panel member was biased essentially is moot in that the panel decided in favor of Kersey and Freeman.